# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**NEAL CALDWELL, EXECUTOR FOR**
**THE ESTATE OF CHARLES**
**CALDWELL,** *et al.*,

    **Plaintiffs,**

vs.

    **Civil Action 2:10-cv-00915**
    **Judge Edmund A. Sargus**
    **Magistrate Judge E. A. Preston Deavers**

**OHTEX ENERGY COMPANY, LLC,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiffs, Inez Caldwell and Neal Caldwell, as Executor for the Estate of Charles Caldwell, bring this action for recision of an oil and gas lease entered into with Defendant, OHTEX Energy Company, LLC. Although Plaintiffs originally filed this action in the Belmont County, Ohio Court of Common Pleas on September 13, 2010, Defendant removed this action, claiming diversity jurisdiction, on November 5, 2010. (Mot. Remand 1, ECF No. 8.) For the reasons that follow, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiffs' Motion to Remand.

### I. BACKGROUND

Plaintiffs' claim arises from a contract executed between Charles and Inez Caldwell, as owners of the real property situated in Belmont County, Ohio, and Adam McLeod, Land Manager for Defendant OHTEX Energy Company, LLC. This contract provides an Oil and Gas Lease to Defendant, for which they paid the Caldwells $42,772.50 (Mem. Supp. Mot. Remand 2,

ECF No. 8.)  In their complaint for rescission, Plaintiffs allege that due to their advanced age and ill health at the time of the contract, they did not have the requisite mental capacity to execute the lease and that the lease was obtained through coercion and undue interference.  (Compl.¶ 3, ECF No. 1-2.)  As such, Plaintiffs request that the Court set aside the Oil and Gas lease.  (Compl. ¶ 8, ECF No. 1-2.)  Mr. Caldwell, an original Plaintiff to the Complaint, passed away on September 18, 2010.  The Court, therefore, substituted Neal Caldwell, who was appointed by the Probate Court of Belmont County, Ohio as the Executor for Charles Caldwell's estate, as a Plaintiff in this action.

On November 12, 2010, Defendant filed its Notice of Removal to the United States District Court for the Southern District of Ohio, pursuant to 28 U.S.C.§§ 1332, 1441, and 1446. (Notice Removal ¶ 6, ECF No. 1.)  Thereafter, Plaintiffs filed a Motion to Remand asserting that the amount-in-controversy does not satisfy the requirement of 28 U.S.C. § 1332 and that the issues involved in the action are within the exclusive jurisdiction of Ohio's probate courts.  (Mot. Remand 1, ECF No. 8.)  This case is now before the Court on Plaintiffs' Motion to Remand.

The disputes at issue in this case involve the amount-in-controversy as well as the jurisdiction of Ohio's Probate Courts.  Defendant asserts that the amount-in-controversy is the actual value of the Oil and Gas Lease, which should be measured by the loss of the right to the natural gas and other mineral rights under the land.  Defendant contends that the value of this loss exceeds the $75,000 requirements of 28 U.S.C. §1332.  In support of its claim, Defendant argues that the affidavit of Randall Brooks, the sole owner of OHTEX, satisfies its burden of proof that jurisdiction requirements are met.  (Notice Removal ¶ 6, ECF No.1;  Brooks Aff. ¶ 6, ECF No. 1-5.)  Moreover, Defendant maintains that a map of oil and gas producing wells in

Ohio; news articles concerning gas discovery in the area; and a press release discussing gas discovery in Belmont County, Ohio are further proof of the profitability of an oil and gas lease located on Plaintiff's property. (Resp. Opp'n Mot. Remand 7-8, ECF No. 10.) In contrast, Plaintiffs contend that the Caldwell Estate's sole claim is for rescission, which should be valued at the contract price of $42,772.50. (Mem. Supp. Mot. Remand 2., ECF No. 8.) Plaintiffs also assert that, should the Court consider the amount-in-controversy to be the value of the loss of mineral rights, Defendant's evidence is not sufficient to meet the burden of proof establishing the amount-in-controversy. (*See generally*, Reply ECF No. 12.) Finally, Plaintiffs maintain that this Court should remand this action as it involves matters within the exclusive jurisdiction of Ohio's probate courts. (Mot. Remand 1, ECF No. 8.)

## II. STANDARD

Federal courts have limited subject-matter jurisdiction. "[T]he intent of Congress drastically to restrict federal jurisdiction in controversies of diverse citizens has always been rigorously enforced by the courts." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Removal is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). District courts have original jurisdiction only if the matter raises a factual question under 28 U.S.C. § 1331 or if the parties are citizens of different states and the value of their controversy exceeds $75,000 under 28 U.S.C. § 1332.

Federal courts have "original 'diversity' jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) (citing 28 U.S.C. § 1332(a)).

Furthermore, the Court must determine "whether complete diversity exists at the time of removal." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999).

The removing party bears the burden of demonstrating federal jurisdiction and all doubts should be resolved against removal. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006). The removing party must demonstrate such "by competent proof that the complete diversity and amount-in-controversy requirements are met." *Cleveland Housing Renewal Project v. Deutsche Bank*, 621 F.3d 554, 559 (6th Cir. 2010) (citing *Hertz Corp. v. Friend,* 130 S.Ct. 1181, 1194-1195 (2010)). Furthermore, the moving party must demonstrate that the amount-in-controversy is met by a preponderance of the evidence. *Hayes v. Equitable Energy Res Co.*, 266 F.3d 560, 572 (6th Cir. 2001). This standard, however, "does not place upon the defendant the daunting burden of proving, to a legal certainty that the plaintiff's damages are not less that the amount-in-controversy requirement." *Id.* (internal quotation omitted).

### III. LEGAL ANALYSIS

**A.** <u>**Applicable Law**</u>

When determining whether the amount-in-controversy requirements is met in relation to a rescission claim, courts in the Sixth Circuit consider the entire value of the contract. *Rosen v. Chrysler Corp*., 205 F.3d 918, 921-22 (6th Cir. 2000); *Harnden v. Jayco, Inc.,* 496 F.3d 579, 582 (6th Cir. 2007).

In the context of an oil and mineral lease, the Court of Appeals for the Sixth Circuit has noted that "we calculate the amount in controversy by accounting for the mineral interest in the land, and not merely the possessory interest." *Northup Props., Inc., v. Chesapeake Appalachia, LLC.,* 567 F.3d 767, 770 n.1 (6th Cir. 2009). In valuing mineral leases, federal courts require

competent proof.  Case law demonstrates a preference for expert testimony and thorough analysis of the various factors influencing the profitability of mineral leases.  *See e.g., id.* at 771 (accepting detailed affidavits as satisfying the burden of proof that amount-in-controversy is met stating, "[Defendant]'s affidavits prevent the accounting of the mineral interest from becoming a matter of judicial star-gazing"); *see also Usery v. Anadarko Petroleum Corp.,* 606 F.3d 1017, 1019 (8th Cir. 2010) (reversing a district court's amount in controversy decision because it relied on an affidavit that did not contain various calculations, and did not address factors that affected the value of the mineral lease).  For example, in *Northup* the Sixth Circuit relied upon a Petroleum Engineer's affidavit, detailing the value of the lease, to determine that the case met the amount-in-controversy requirements.  567 F.3d at 769-71.  The affidavit contained estimates regarding (1) future gas flow from natural gas, (2) the discounted present value of the well, (3) the value of the undeveloped acreage of the entire lease-hold, and (4) the initial cost of drilling the well. *Id* at 769.

In another analogous mineral lease case, the Eighth Circuit held that the defendants failed to carry their burden by a preponderance of the evidence.  *Usery*, 606 F.3d at 1020.  The *Usery* Court reasoned that the affidavits the defendants provided contained no estimate of how long the oil wells might be expected to produce; did not indicate what value, if any, the company gave the asset on its books; failed to indicate whether the calculated income was gross or net (the value of the interest would decrease with exploration and development costs); and assumed that the lease in question would be as productive as completed wells nearby without offering any proof of such.  *Usery,* 606 F.3d at 1019–20.  The court in *Usery* would not accept the affidavits as satisfactory proof, despite the fact that one of the affidavits was from a registered petroleum

engineer, who had worked in the oil and gas industry for over thirty years and whose duties included estimating the projected value of gas reserves held by his employer.  *Id.* at 1019; *see also Garner v. XTO Energy, Inc.,* No. 1:10 CV 00041, 2010 WL 3171475, at *2 (E.D. Ark. Aug. 6, 2010) (finding an affidavit submitted by a defendant "woefully inadequate" because it "provide[d] almost no explanation of how a value greater than $75,000 was reached.").

Moreover, in a government takings case involving mineral producing land, the Sixth Circuit emphasized the importance of expert testimony in oil and gas speculation.  *2,84758 Acres of Land,* 529 F.2d 682, 685 (6th Cir. 1976).  Specifically, the Sixth Circuit approved of another court's expectations regarding evidence in oil and mineral valuations: " '[w]e appreciate the fact that there can be no absolutes in the speculative area of oil reserves.  Reliance must necessarily be placed on expert testimony[.]' We agree." *Id.* (quoting *United States v. 79.95 Acres of Land*, etc., 459 F.2d 185, 188 (10th Cir. 1972)); *see also Sullivan v. Chesapeake Louisiana, LP.,* No. Civil Action No. 09-0579, 2009 WL 3735798, at *2 (W.D. La. Nov. 6, 2009) (finding that because the defendant did not provide affidavits by petroleum engineers or similar summary judgment-type evidence, the burden of showing that jurisdiction exists was not met). At bottom, in this and other federal circuits, courts prefer expert testimony and thorough analyses of the various factors influencing the profitability of mineral leases.

Finally, overly speculative assertions as to the value of amount-in-controversy are not acceptable.  *See Brown v. Randall*, 852 F.2d, 568, 1988 U.S. App. WL 76544, at *1 (6th Cir. Jul. 22, 1988) (table decision) (rejecting Plaintiff's speculative personal evaluation of potential royalties to establish the amount-in-controversy requirements); *Torres v. State Farm Mut. Ins. Co.,* 478 F.Supp. 2d 924, 928 (E.D. Mich. 2007) (remanding case for failure to meet the diversity

jurisdiction, stating "[b]ecause the Court must speculate about whether the amount in controversy will exceed $75,000, the Court finds that the amount in controversy required for diversity jurisdiction cannot be determined at this juncture."); *Richmond v. Populous Group, LLC,* No. 4:05 CV 01900, 2005 WL 2338824, at *2 (N.D. Ohio Sept. 23, 2005) (finding insufficient evidence to meet amount-in-controversy requirements because "[r]eliance on speculation and conjecture is contrary to the Sixth Circuit's requirement that the subject matter jurisdiction of this Court should be determined by a preponderance of the evidence."); *Kinch v. Chrysler Credit Corp.*, 367 F.Supp. 436, 439 (D.C. Tenn. 1973) (plaintiff's claim regarding loss of income was "highly speculative" and could not meet jurisdictional requirement).

**B.      Analysis**

In this case, Defendant's initial payment to Plaintiff's for the lease was $42,772.50.[1] (Mem. Supp. Mot. Remand 2, ECF No. 8; Pls.' Ex. 4 ¶ 2, ECF No. 8-4.) Nevertheless, even considering the value of the underlying mineral interest, Defendant has not satisfied its burden of proof with regard to the amount-in-controversy.

As previously stated, a defendant seeking to remove a case has the burden of proving the diversity jurisdiction requirements by a preponderance of the evidence.[2] In order to determine

---

[1] The lease also provided for royalty payments from the resources produced from the leased premises and entitled Plaintiffs to one-eighth of the proceeds.

[2] Defendant contends that Plaintiffs have not provided documentation to contradict its assertions regarding the value of the lease. However, the burden is on the removing party to meet its evidentiary requirement. If appropriately challenged, by the opposing party or on the court's own motion, the plaintiff must support its jurisdictional allegation. *St. Paul Mercury Indem. Co.*, 303 U.S. at 288 n.10; *see also De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995) ("[O]nce the defendant has pointed to an adequate jurisdictional amount, the situation becomes analogous to the 'typical' circumstances in which the *St. Paul Mercury* 'legal certainty' test is applicable").

the amount-in-controversy here, Defendant must demonstrate by competent proof the value of the right to execute this lease "more likely than not" exceeds the $75,000 amount-in-controversy requirement.  Defendant contends that the affidavit of Randal Brooks, who is the sole member and managing member of OHTEX Energy Company, LLC., demonstrates that the amount-in-controversy is met.  (Mem. Supp. Resp. Opp'n Mot. Remand 7, ECF No. 10.)  Estimating the probable profitability of extracting oil and gas from Plaintiffs' property under the contract, Brooks values the lease in excess of $75,000.  (Brooks Aff. ¶ 6, ECF No. 1-5).  Brooks bases his ability to properly evaluate the value of this lease solely on his twenty (20) year involvement in the oil and gas business.[3]  (Brooks Aff. ¶6, ECF No. 1-5).  As further evidence, Defendant points to a map of oil and gas producing wells in Ohio, articles discussing the potential for gas discovery, and a press release discussing gas discovery in Belmont County, Ohio.[4]  ( Notice

---

[3]Defendant cites *Frystak v. Cabot Oil & Gas Corp.* in support of its conclusion that the affidavit of Mr. Brooks satisfies its evidentiary burden.  In that case, the court relied exclusively upon an affidavit from Cabot's Regional Land Manager, in which the affiant attested that he was "knowledgeable as to leasing of oil and gas properties and production of oil and gas wells." *Frystak v. Cabot Oil & Gas Corp.,* No. 3:08 CV 667, 2008 WL 2357744, at*3 (M.D. Pa. June 5, 2008).  The affidavit apparently contained a statement that, based on the Land Manager's knowledge, "the full value of the object of the litigation exceeds $75,000 exclusive of interests and costs." *Id.*  The same judge disposed of multiple cases dealing with Cabot Oil & Gas Corp. on the same day.  *See Starzec v. Cabot Oil & Gas, Corp.*, No. 3:08 CV 668, 2008 WL 2357746 (M.D. Pa . June 5, 2008), *Escandel v. Cabot Oil & Gas*, Corp., No. 3:08 CV 669, 2008 WL 2357749 (M.D. Pa. June 5, 2008), *Wells v. Cabot Oil & Gas, Corp.*, No. 3:08 CV 666, 2008 WL 2357756 (M.D. Pa June 5, 2008).  However, these opinions offer only a cursory analysis of the amount-in-controversy issue, and provide little detail as to the exact information in the affidavit.  Thus, the undersigned finds that the authoritative value of these opinions is limited at best.

[4] Assuming these documents to be evidence as to the value of the oil and gas lease, some further authentication would be necessary in order to consider all of these documents.  Fed. R.Evid. 901; *Baseball at Trotwood, LLC. v. Dayton Prof. Baseball Club,* No. C-3-98-260, 2003 WL 25566103, at *72 (S.D. Ohio Sept. 2, 2003) (finding a press release from a third party inadmissible hearsay); *T. Marzetti Co. v. Roskam Baking Co.,* No. 2:90 CV 584, 2010 WL 909582, at *2 (S.D. Ohio March 11, 2010) (requiring authentication of internet print-outs for

Removal, Ex. G, ECF No. 10-7; Notice Removal, Ex. H, ECF No. 10-8.) Defendant contends that this proof is competent to demonstrate that, more likely than not, the value of the lease at issue will meet the amount-in-controversy requirement of 28 U.S.C. §1332. This Court disagrees.

Defendant's evidence is at best speculative as to the value of any oil or gas on Plaintiffs' property. Mr. Brooks fails to offer any basis for his conclusions other than his personal opinion regarding the profitability of the lease. In addition, Mr. Brooks fails to establish himself as an expert in the area or indicate any specialized training or knowledge. Without more, the assertions in his affidavit regarding the value of the lease amount to nothing more than the speculation of a self-interested party. Regardless of Mr. Brooks' qualifications and personal ability to predict the value of the lease, his affidavit itself lacks analysis or any basis for its conclusion. For example, Mr. Brooks' affidavit does not provide an estimate of how long the mineral interest might be reasonably expected to produce; indicate what value, if any, he gave the asset on his books; or state whether the income generated would be gross income or net income, which would take into account various costs of development and extraction. *See Usery*, 606 F.3d at 1019-1020. Mr. Brooks' ability to predict the profitability of the lease is further hampered in light of the fact that no wells have been developed on the Plaintiffs' land. It may be

---

non-hearsay purpose); *Sullivan v. Chesapeake Louisiana, LP.,* Civil Action No. 09-0579, 2009 WL 3735798, at *2 (W.D. La. Nov. 6, 2009) (finding that press releases found on the website of third party, which reference wells in drilled in connection with a an oil shale, to be inadmissible hearsay). Even considering these documents, Defendant has failed to provide sufficient information, such has expert testimony, for the Court to reasonably infer that the location of these other producing wells demonstrate the probable productivity of wells on the Plaintiffs' property. *See Usery,* 606 F.3d at 1020 (rejecting claims in an affidavit that offered "no hint as to the likelihood that wells on the property in issue would be as productive as the one three miles away.").

that wells on the land would be productive. It may be as likely that wells would be dry. The point here is that the evidence in this case, including Mr. Brooks' affidavit, leaves the Court in the untenable position of engaging in the sort of "judicial star-gazing" the Sixth Circuit Court of Appeals prohibits.

Based on the circumstances of this case, the undersigned finds Defendant has failed to meet its burden in establishing the amount-in-controversy. Without a supported determination regarding Mr. Brooks' ability to accurately predict the profitability of the lease, the Court cannot accept his speculative statements. The Court, therefore, concludes that Defendant has not met its burden of proof and has failed to demonstrate that more likely than not, the value of the Oil and Mineral lease meets the amount-in-controversy requirements of 28 U.S.C. § 1332(a).[5]

## IV. CONCLUSION

Because the Defendant has failed to establish the amount-in-controversy requirement, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's Motion to Remand.

## V. NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

---

[5] Because the Court finds that the amount-in-controversy requirement is not met in this case, it is not necessary to analyze Plaintiff's second basis for remand, namely that this matter is exclusively within the jurisdiction of Ohio's probate courts.

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: April 18, 2011                                               /s/ *Elizabeth A. Preston Deavers*
                                                                             Elizabeth A. Preston Deavers
                                                                             United States Magistrate Judge